This case will be heard by Judge Bianco and myself and the case on the calendar is Rubin v. Montefiore. We'll hear from the appellant. May it please the court, counsel. Defendant Montefiore Medical Center has its in-house collection department send letters on a telecomputer systems letterhead. The hospital goes to elaborate lengths to create a brand identity so that anybody seeing a communication from it will instantly recognize its source. It has a design guide and brand center that is about 60 pages of the record and it's had it for about 10 years. It has distinctive coloration, detailed instructions going down to the size and relative proportions of the font, its coloration and so forth. When it collects debts, the hospital first sends a series of bills that conform precisely to the brand identity. Then it sends a document on a fake telecomputer systems letterhead. It admittedly does this. Well, it's not fake, right? It's part of Montefiore. The system, isn't it? There is no company that is actually telecomputer systems. The letter does not clearly identify itself as being from Montefiore. But what is the address of telecommunity, telecomputer systems? Isn't it the same address as Montefiore? It is a post office box that is the same one as Montefiore. The problem is that unless you put the letters next to each other and study them intently- Mr. Adelman, you don't need to do that. If the sophisticated consumer was saying, I don't see that big emblem on the top that I saw in the other letters, they would see Montefiore referenced seven times in the letter, including all the payment, all the modes of payment to the Montefiore website. If you call the number, it says business office of Montefiore, which apparently your client did call. The mailing address says make payable to Montefiore Medical Center. So any confusion because the logo is no longer there, isn't it immediately dispelled by the multiple references to Montefiore on the letter? It is not. A consumer who looks at a letter and wants to know where it comes from is going to look at the letterhead. That's where- Oh no, the law is you have to look at the whole letter. We assume even the least sophisticated consumer is not just going to look at the letterhead, that they're going to look at the whole letter, right? The clues that Montefiore argues on the basis of are very subtle and do not clearly and conspicuously disclose that this letter, unlike the last four, is from- It's subtle who you're paying. It's a subtle thing who you're paying and how you're paying it. That's not subtle. When you're talking about a debt, that's what people are looking at, right? A major thing they're looking at. Not true. Lots of collection letters, direct payment to the creditor. Where is that in the record? We cite a number of cases in which exactly that has taken place. How about it says, thank you for choosing Montefiore Medical Center. It's a privilege to care for you. What debt collection agency says it's a privilege to care for you? It is a stock phrase which Montefiore has caused to be inserted, but that's the only- Because it's their letter. That's why they caused it to be inserted, because isn't it their letter? Getting that phrase towards the end of a letter, which has a letterhead, which does not denote Montefiore, and which does not conform to the brand identity of Montefiore, does not tell the unsophisticated consumer anything else than that Montefiore- You want the rule of law to be that if the name of the company is not in the letterhead, it doesn't matter what else is in the rest of the letter. That might indicate it is the company. It's all about the letterhead. That's essentially what you're arguing. What I'm arguing is that the standard is set forth in the creditors correspondence must be clearly labeled as to its source in order to avoid a violation. In trademark cases, and this case does involve a misuse of trademarks, the court requires that disclaimers and similar warnings be prominent and unambiguous. Slipping in those words in a letter, which has its letterhead, something other than Montefiore, is very distinct from the brand identification in every other correspondence that you've gotten concerning the same letter. It does not conform to that standard. The post office box may be the same, but- Also, all the payment options, as I look at them, bring the money, the payment of the debt to Montefiore through MyChart, through a call, which when you make, they answer Montefiore, and the guarantor number, which is from Montefiore. If you want to write a check, as some people still do, you mail it to Montefiore Medical Center. What is confusing about that? Many collection letters direct payment to the creditor. It's very common. I think we cited about seven cases in our brief where the letters did exactly that. That is not something that is a disclosure that this is Montefiore. Identification of the debt isn't a disclosure. Of course, the letter is going to say, this is a Montefiore debt. It's going to have the account number that's both required by the FDCPA and who would pay if you couldn't identify the letter, are going to tell the unsophisticated consumer that this is really just another letter from Montefiore, even though it looks completely different from every prior letter that you've gotten from Montefiore, does not conform to the brand identity. It would have been very simple to either use the same brand identity or state, Telecomputer Systems, the that. Thank you, counsel. You've reserved three minutes for rebuttal. We'll hear from Montefiore. Thank you, your honor. May it please the court. I think your honors both understand our arguments with respect to the, what Mr. Edelman calls the clues in this letter that suggests that it's from Montefiore. And we think it is quite clear in particular the statements on the last page, the back page of the letter, which were not originally included in the complaint express sentiments that could not be expressed by a third party debt collector. And that's what you were referring to your honor when you mentioned the, it's a privilege to have you as a patient. I think also some of the uses, Mr. Edelman and Mr. Rubin have pointed out some uses of third person language in the letter, but overlook the critical uses of first person, which directs. Counsel, why does Montefiore use a return address of Telecomputer Systems? They could have easily put Montefiore in the return address. Why don't they do it? Well, they have now, your honor. Thanks to Mr. Edelman and his client and will going forward. The explanation is an innocent one. It's a little unusual. They ordered software back in the late has this line in the address form. I believe the record shows that in the year that Mr. Rubin received this letter, 130,000 of these letters went out. This is the only complaint we're aware of. Certainly the only lawsuit that's been filed suggesting there's any confusion about it. But yes, now it is, it was an easy change. And it now says Montefiore, I believe it says pre-collection. And that is one more indication in the current letters. But of course, as Judge Bianco pointed out, even the least sophisticated consumer is required to read the entire letter. And as this court pointed out in Cloman, it must do so with care, with some care. So if you read the letter in its entirety, I don't think even the least sophisticated consumer could mistake who it's coming from. I think your honors both pointed out some of the key indicators of that, in particular, where the payment is directed. There are several cases that we've cited Marquardt, Porter, Coleman, which are actual false name cases, where that is cited as a primary reason why it was clear that it came from a creditor, the letters. The cases that Mr. Edelman is referring to are not false name cases. So it is true, as he says, that there are cases involving debt collectors who send letters that say direct your payment to the creditor. But they also say everything else that would indicate that they're coming from a debt collector rather than the creditor. So there's no case that we're aware of that involves this false name exception in which the court has not found it relevant that the payment is directed to the creditor. Here, of course, it's not just send a check to Montefiore. It's pay at mychart.montefiore.com, which, you know, indisputably, even though Mr. Rubin had not accessed the mychart's website, the name of that website certainly indicates that it's a patient health portal. It's not, you know, billing at montefiore.com. It's the entire hospital. It's your chart at the hospital. It also, in the indications, again, the use of first person, where the letter suggests that Mr. Rubin or any other debtor who receives this, any patient who receives this, can call us to discuss Montefiore's patient payment plan. Again, a third-party creditor couldn't say call us to discuss the creditor's financial assistance plan. I want to address one of the few other things. Let's go back to your payment point for one second, Mr. Dewey. I think Mr. Edelman's response to that is even though creditors that put the company's name as the make payment to, and everything else is indication of a debt collector, that the least sophisticated consumer, if they're getting multiple letters from multiple, you know, debt collectors, might not see that as necessarily any type of indicia that it's not a debt collector, I guess, is the point. You understand what I'm saying? I do, Your Honor, and I think it would be a different case, potentially, if that was all I was pointing to. But again, it's our position that the entire letter, the letter must be read in its entirety. That is, in fact, the law, and it must be read with care. You can't just pick and choose some portion of the letter, here, the heading in the address line, and conclude from that that the least sophisticated consumer would read no further and would make no inquiry to find out who the letter's coming from. I do want to just correct, I don't, Mr. Edelman's repeatedly referred to this as telecomputer systems letterhead. I don't think that's accurate. I don't think that's established in the record. It's the first line in the address line, which indicates when you send it to the same PO box that all the other bills and letters came from, it gets directed to this unit within Montefiore. I think, Your Honor, Judge Bianco, I think the other point I would bring to light is to compare this to those few cases at the circuit level, including in this court, McGuire, in which the name exception has been found. The factors that this court pointed to in McGuire, none of them are present here. In McGuire, the letter didn't mention, the letter came from a name, debtor assistance. It didn't mention Citicorp, the actual creditor, at all. Ours, as you noted, mentions Montefiore seven times. It uses the first person in connection with Montefiore five times, and it expresses the sentiments of Montefiore, as opposed to a debt collector. The return address in the McGuire letter was completely new. Ours, as you pointed out, is the same. It's the same PO box, but simply a different sort of referral line at the top. The phone number, this was deemed relevant in McGuire. The phone number that was in that letter was answered by someone claiming to be from debtor assistance, not Citicorp. Complete opposite in this case. As the recording of Mr. Rubin's call makes clear, this number on the letter was answered by Montefiore's business office. Importantly, again, the McGuire letter did not have these payment options that made clear that the payment would be going to the creditor. I could go down the list. I think it's very different from the Katenkamp case in the Seventh Circuit that Mr. Rubin relies on. That's, I think, the more prototypical false name case in which there clearly is an intent to deceive the creditor. That's why the Seventh Circuit said, when a letter literally proclaims that it's coming from a third party, then you're subject to the exception. We have nothing like that here for all the reasons we've discussed. The other prototypical case, I think, is shown in the Echnicki and Nitzkin decisions that Mr. Rubin relies on. That's where the creditor's in-house counsel uses his or her own letterhead, suggesting that it's actually outside counsel beginning debt collection proceedings. Again, none of that is present here. I'm happy to answer any other questions on that main issue of the merits here. I do, and I regret to do this so late in the argument, since I know you're trying to keep with time. I do want to point out that I think there's a standing issue that has become more clear since the Supreme Court's decision in TransUnion this past June. In the last month, Seventh Circuit and Sixth Circuit have cited TransUnion in FDCPA cases to hold that the sorts of injuries that are alleged, where confusion, intimidation, frustration, those are not concrete injuries. In fact, it's necessary to confer Article III standing. Instead, you have to have a concrete harm, something that can be traced back to common law harms or something that actually causes, for instance, the debtor to make a payment that wouldn't otherwise be due. I can discuss that further. I'm also happy at this late date, if your honors would prefer to receive a letter summarizing the more recent cases. I do apologize that it wasn't something that we brought to your attention sooner, but there have been in the last month, these two decisions applying TransUnion in this context. If there are no further questions, I'm happy to rest on our brief. If your honors see fit, I'd be happy to summarize the recent decisions in a 20HA letter. Thank you, Counsel. Mr. Edelman, do you want to respond to the recent cases or anything that Mr. Dooley argued? I'd like to make two points. First, the record does show why Montefiore did this. It did it because the telecomputer systems letterhead was more effective at collecting debts than letters sent under the name of Montefiore. That's pages 884 through 888 of the record, the McNiff transcript pages 42 through 46. With respect to the standing issue raised for the first time, it is clear from the record that Mr. Rubin was in fact adversely impacted by the violation complained of. One of the violations we allege was that the telecomputer systems letter does not contain the dispute a debt that you believe to be wrong. Mr. Rubin, as acknowledged in defendant's brief at page 6, did dispute his bill. He gets the telecomputer systems letter. He does not properly exercise his dispute rights and request an itemization of what the charges are and how they relate to his medical treatment. He instead calls them up at the beginning of the call. The person answers. It's either Montefiore billing or Montefiore business office. It's hard to tell when you listen to it. Then gets into a very elaborate and long discussion with the phone rep as to such things as whether he was admitted into the hospital, which the phone rep says at one point, or was simply an outpatient, which is what he claimed. He ultimately agreed to pay over the phone part of the claimed debt, the part which he felt he owed. We have a situation where he fails to properly exercise his dispute rights. He fails to require Montefiore to cease collection until they provide the necessary information. In terms of standing decisions, which I'd be happy to respond to in writing, there's a Seventh Circuit case called Levallee versus MedOne Solutions. It's 932F31049, which involved a consumer who was the subject of collection activity. In that case, a lawsuit, did not get a notice of debt, was not sent one. The Seventh Circuit says, yes, you have standing because you were not told of how to exercise your right to dispute a debt under circumstances where you're clearly desirous and need to know how to dispute it. I would suggest that both, that they filed their 28-J letter and that we respond, Your Honors. Thank you. Thank you both for reserved decision. We will confer on whether we need 28-J letters and inform the parties shortly. This concludes this calendar. I will ask the clerk to put us back in the roving room so that Judge Cabranes can join us.